UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                               CRIM. CASE NO. 12-20198

v.                                         PAUL D. BORMAN
                                             UNITED STATES DISTRICT JUDGE

DARON CHRISTOPHER KING,

    Defendant.
_____/

**ORDER**
**GRANTING MOTION TO SUPPRESS JAILED DEFENDANT'S STATEMENTS TO**
**LAW ENFORCEMENT OFFICIALS ON FEBRUARY 7TH AND FEBRUARY 15, 2012**

<u>BACKGROUND</u>

On March 28, 2012, Defendant Daron King, was indicted federally on two counts of possession with intent to distribute controlled substances on January 13, 2012; <u>Count One</u>: Vicodin ES; <u>Count Two</u>: Xanax. On March 29, 2012, the United States Attorney filed a notice information under 21 U.S.C. §851, that, upon conviction, provides for increased punishment by reason of prior convictions.

Both drugs, in the form of pills containing schedule III and schedule IV controlled substances, respectively, were seized from Defendant's person when he was arrested at the Jackson, Michigan bus station by Jackson County Sheriff's Deputies on January 13, 2012.

Thereafter, Defendant King was charged criminally in state court and lodged in the Jackson County Jail. Defendant King was charged with a controlled substance offense regarding the pills, and with two counts of resisting/obstructing police officers. Specifically, Count 1 of the

1

State Felony Warrant charged possession with intent to disburse "Vicodin and/or Xanax." Counts 2 & 3 charged assaulting/resisting/obstructing each of the two arresting deputy sheriffs.

Defendant King was detained because he was unable to post a $50,000 cash or surety bond imposed by a state court judge, and requested a court-appointed counsel. The state court judge appointed counsel to represent him on January 18, 2012: Attorney Wendell E. Jacobs, Jr..

Attorney Jacobs represented him at the state court preliminary examination, which Sgt. Gary Schuette of the City of Jackson Police Department attended. (Sgt. Schuette, Federal Motion to Suppress Hearing, July 12, 2012, TR. P. 57.) (Hereinafter TR.). Sgt. Schuette was the lead questioner in the two jailhouse interviews that produced the statements at issue in this motion.

While Defendant King was incarcerated pending further criminal proceedings in state court, Sgt. Schuette, accompanied by Federal Alcohol, Tobacco, Firearms, Explosives ("ATFE") Special Agent Brian Beardsley, visited Defendant King at the Jackson County Jail on two occasions, February 7, and February 15, 2012, to question him. Schuette testified that he was there to question Defendant King only about the firebombing of a house in Jackson in the early-morning hours before Defendant's bus station arrest. However, Sgt. Schuette knew going into the interviews, that the firebombing was intertwined with a dispute about contraband pills, some of which were in Defendant's pocket at the time of his arrest. TR., Schuette Pp. 40-41, 43-44.

Sgt. Schuette testified that with ATFE Special Agent Beardsley at his side, he provided Defendant King with the standard *Miranda* warnings at both interviews, that Defendant King waived his rights and then made incriminating statements about the pills that the Government seeks to introduce in the instant Federal case: the same state-case pills.

## THE WARNINGS

Sgt. Schuette, was well aware that Defendant King had been appointed a lawyer in the state proceedings, because Schuette had attended the state court preliminary examination. Of significance to the instant Motion to Suppress, Schuette's standard *Miranda* warnings to Defendant did not acknowledge to Defendant the critical fact that he already had a court-appointed lawyer, who, without the need for any court legal procedures to appoint counsel, could be called right over to be present at the interview if Defendant wanted him there. Indeed, Sgt. Schuette recognized the Defendant had a lawyer who should be there; he got the lawyer's waiver of his presence at the jail interviews. Thus, in this case, instead of the warning that was given: "if you [want to consult with a lawyer before you answer any questions] cannot afford a lawyer, one will be appointed for you before questioning . . . if you so desire," the warning should have stated:

> You already have a court-appointed lawyer and are entitled to have
> him represent you at this interview. Do you want your lawyer here
> during this questioning?

To recapitulate, what occurred here was that Sgt. Schuette, in the presence of ATFE S.A. Beardsley, told Defendant King that he had the right to have counsel present, and that if he wanted a lawyer and could not afford counsel, questioning would stop, and the Court would appoint a lawyer to represent him. This clearly implied that to secure an attorney for the interview, a new counsel appointment was necessary through an additional time consuming court process for Defendant who had already been jailed for three weeks. The reality was, however, that Defendant already had appointed counsel who, at Defendant's request, could have right then been called to that interview on February 7th, and the subsequent interview on February 15th.

3

As discussed *infra*, that Detective Schuette also was involved in investigating the already-charged, counsel-appointed state pill case, is further evidenced by his early March request for and receipt of a writ of habeas corpus signed by a state judge, to facilitate investigation of the state pill case. Although Sgt. Schuette ultimately decided not to execute the writ that he had sought from the prosecutor, which was signed by a state court judge on March 7, 2012, the writ states, *inter alia*:

> [R]elease the above named inmate to the custody of Jackson City Police Detective Gary Schuette . . . <u>for the purposes of an investigation</u> on March 8, 2012 at 10:00 a.m. <u>in the following matter:</u>
> People . . . vs. Daron Christopher King, Circuit Court File No. 12-004059-FH . . .

(emphasis added).

Sgt. Schuette's testimony at the instant Motion to Suppress evidenced that he recognized that defendant had the right to have his state court-appointed lawyer present at Schuette's jail interviews because he had contacted Defendant's state court-appointed lawyer and sought the lawyer's permission to interview Defendant without the lawyer there, with Schuette's commitment that he would not talk about the state-charged pills. Schuette TR. Pp. 45-46, 61-63. Schuette testified that Defendant's state court-appointed lawyer told him on both occasions that he waived his presence at the questioning as long as Schuette didn't talk to Defendant about the pills. Schuette TR. Pp. 46-48.

Accordingly, Sgt. Schuette recognized that Defendant had a state court-appointed lawyer, and that Defendant had a right to have that lawyer present at the interviews. However, Detective Schuette erred, and deprived Defendant of his Sixth Amendment right to counsel when he failed to apprise Defendant that he could have his already appointed lawyer present at the interview, but

instead told him that he would have to go through a new lawyer appointment process. Detective Schuette further erred, and deprived Defendant of his Sixth Amendment right to counsel when he erroneously assumed that the state court-appointed lawyer could waive Defendant's right to have his lawyer present at the jail interview; Schuette had to secure <u>Defendant's</u> waiver of his right to his lawyer's presence at the questioning.

The Defendant is the holder of the Sixth Amendment right, not his lawyer, and it is the Defendant who must be properly informed with regard to having his already appointed lawyer present, and it is the Defendant who, after being so apprised, must decide whether to waive his Sixth Amendment right to have his counsel present at that state-initiated jailhouse interview.

Defendant was indicted federally on March 28, 2012, for the very same drugs as the state charge. The State charges were then dismissed by nolle prosequi.

## LEGAL DISCUSSION

Legal analysis begins with the Supreme Court's decision in *Texas v. Cobb*, 121 S. Ct. 1335, 1339 (2001), which held as follows:

> We hold that our decision in *McNeil v. Wisconsin*, 111 S. Ct. 2204 (1991) meant what it said, and that the Sixth Amendment right is "offense specific."

Cobb was under arrest for an unrelated offense when he was questioned about the incident at issue. The Supreme Court further reiterated:

> The Sixth Amendment right to counsel is personal to the defendant and specific to the offense.

*Id.* at 1343.

The Court then elaborated "that the definition of an 'offense' is not necessarily limited to the four corners of a charging instrument." *Id.* at 1343. The Court then quoted the test handed

5

down in *Blockburger v. United States*, 52 S. Ct. 180 (1932):

> In *Blockburger* . . . we explained that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."

Applying this analysis, the Supreme Court held in *Cobb* that:

> [W]hen the Sixth Amendment right to counsel attaches, it does encompass offenses that, even if not formally charged, would be considered the same offense under the *Blockburger* test.

*Id.*

In the instant case, this Court concludes that the state pill charge and the federal pill charges constitute the same offense: the same type of pills, the same date, the same arrest. Spot On!

The Supreme Court has recently reaffirmed the defendant's right to effective assistance of counsel at all critical stages of the criminal proceedings, which include interrogations. *Missouri v. Frye*, 132 S. Ct. 1399, 1405 (2012).

Thus, although Jackson County Sheriff Deputy Gary Schuette testified at this Court's hearing on the motion to suppress that he asked for and received permission from Defendant's court-appointed lawyer Wendell Jacobs in the state case to talk to Defendant about a firebombing, [promising that he would not talk about the pills even though Schuette knew they were connected to the firebombing], that waiver of counsel's presence was not counsel's to make, but instead Defendant's. The Sixth Amendment guarantees the defendant the right to counsel, and therefore the right to waive counsel. Defendant King was not provided that option by Detective Schuette who unilaterally, by a promise to counsel, later to be broken, deprived

Defendant of his right to his already appointed counsel. The *Miranda* warnings Defendant had received included this statement:

> 4. If you cannot afford a lawyer, one will be appointed for you before questioning or at any time during questioning if you so desire.

This infers that Defendant presently does not have a lawyer to represent him at this interrogation, and if he wants a lawyer that he has to go back before a judge to get a new lawyer appointed to represent him for this interview/interrogation. This warning is misleading and incorrect, because Defendant already had a lawyer that he had a right to call upon at that moment to be there for that interrogation.

Indeed, it is worth reiterating that Sgt. Schuette clearly recognized that Defendant had that right to have his state court-appointed lawyer to be there, by calling that lawyer in advance and asking him to waive his appearance at the Defendant's interrogation, after guaranteeing the lawyer that Schuette would not question Defendant about the very same pills that formed the basis for both the state prosecution and the instant federal prosecution, in which the Federal Government seeks to introduce Defendant's statements about pills.

As noted *supra*, the Court finds two major problems with Sgt. Schuette's procedure:

(1) since Defendant King is the holder of the Sixth Amendment right to counsel, Schuette should have asked Defendant whether he wanted his already-appointed lawyer to come over and be present at the questioning or whether he would waive his right to the lawyer's presence during the interrogation.

(2) Sgt Schuette, who had attended Defendant's state court preliminary examination on the pills charge, testified that he knew going into the interview that the pills were

7

intertwined with the firebombing, and the recordings of the two interviews on February 7th and February 15th evidence both this intertwining, and also evidence Schuette's and Beardsley's probing relating to the pills.

Defendant's Sixth Amendment right to counsel had attached to the state drug charge at the time of the February 7th and February 15th interviews by state and federal law enforcement agents. The lead agent in the interviews was state agent Schuette. Also present was an ATFE agent who also asked some questions regarding pills. The instant federal charge involves the very same pills that were the subject of the state charge. This is the same offense under the *Blockburger* test.

Sgt. Schuette testified that before he interviewed Defendant King on February 7th, he knew that the pills and firebombing were intertwined. Schuette TR. Pp. 42-43. Thus, he deceived Defendant King's state appointed lawyer when he stated that the interview would not be about the pills. And the tape recordings of the interviews evidence discussions about pills.

This Court recognizes that the Sixth Circuit has not dealt with this issue and that federal circuits are split over whether conduct that violates laws of separate sovereigns establishes that the offenses are distinct for purposes of the Sixth Amendment right to counsel. See *United States v. Burgest*, 519 F.3d 1307, 1310 (11th Cir. 2008). The Eleventh Circuit applied a separate sovereign holding: "Burgest's right to counsel did not attach to his federal charges at the time federal agents questioned him." *Id. Accord United States v. Harris*, 526 F.3d 1334, 1339-40 (11th Cir. 2008); *United States v. Coker*, 433 F.3d 39 (1st Cir. 2005). This Court notes that in both Eleventh Circuit cases and in the First Circuit case, Defendants, in state custody, were later questioned by Federal Agents, while in the instant case, the later questioning of Defendant King

in state custody was by both <u>state</u> and federal agents.

The Second Circuit rejected the separate sovereign theory, in *United States v. Mills*, 412 F.3d 325 (2d Cir. 2005). *Mills* rejected the government's argument that because the state gun charges (unrelated to the federal charge) were prosecuted by separate sovereigns, Defendant's Sixth Amendment right to counsel did not attach as to the federal charge:

> We hold that the statements obtained in violation of Mills' right to counsel as to the state proceedings must also be suppressed in the federal proceedings because the two proceedings were for the "same offense," each requiring proof of identical essential elements. Under [*Texas v.*] *Cobb*, the Sixth Amendment right of counsel extends to offenses considered to be the "same offense" as those to which the right has already attached even when they are prosecuted by different sovereigns.

*Mills* at 327.

In *United States v. Red Bird*, 287 F.3d 709 (8th Cir. 2002), the Eighth Circuit rejected the government's separate sovereign argument that the tribal and federal criminal complaints for the same rape did not charge the same offense, because the rape violated the laws of two separate sovereigns. In that case, the Eighth Circuit noted that "the tribe and the U.S. worked in tandem to investigate the rape." *Id.* at 715. In the instant case, the interviews that produced the statements that the government wants to introduce the very same federal pills as in the state case, and were the product of the state and federal agents working in tandem.

This Court rejects the separate sovereign theory, which would compel the result that because the instant crime is prosecuted by a separate sovereign, the Defendant's Sixth Amendment right to counsel can be bypassed. Further, the fact that the federal prosecution seeks to rely on statements made to a tandem of both federal and state agents questioning Defendant, further undermines the separate sovereign argument in this case.

9

Interspersed in the February 7th interview were questions about pills. For example, in the instant hearing, Schuette testified that he asked Defendant if he knew anyone on Detroit's West Side – which was directly related to pills, not the Jackson firebombing. TR. P. 23.

Significantly, Schuette testified that going into the first interview with Defendant on February 7th, he had spoken with Erica LaFountain on January 26, 2012, and learned that she was the person who had called the police about Defendant King and the pills, and he then discovered that the pills were involved. Schuette further testified that Ms. LaFountain told him that the pills were intertwined with the firebombing. TR. Pp. 40-41. Schuette further testified that Susan Sobiegray told him a similar story. Schuette TR. Pp. 43-44.

Schuette's further testimony confirms the pills/firebombing connection:

Q. [Defense Attorney] So, now you know that Mr. King is the person both with the pills and the supposed firebombing, correct?
A. Yes.
Q. And then so you learned that he was lodged at the Jackson County Jail for possession with intent to distribute pills, right?
...
A. Yes.
Q. And they are the same pills that are the subject of this federal case, correct?
A. Yes.

Schuette, TR. P.44.

Testifying about the second interview on February 15th, Schuette further acknowledged that pills were a large part of the case involving the firebombing. Schuette TR P. 65.

Finally, linking the state pill charge and the interviews with regard to Defendant's continuing right to the state court-appointed counsel to the two interviews, Schuette testified that he went to the county prosecutor to ask them to draw up a writ of habeas corpus using the state case, name and number, *People v. Daron King*, 12-004059-FH, to release Defendant to his

custody for investigation purposes relating to that case. Defendant's Exh. 2. TR. P. 68.

This writ was submitted by the prosecutor, at Schuette's request to a state court judge who signed it; it was never executed by Sgt. Schuette. Nevertheless, the language of the writ evidences either that Sgt. Schuette was, as late as March 2012, continuing the investigation in the state charged pill case, or improperly using that case as the legal justification for an investigation of another matter. Either way, the signed writ evidences the conflation of the investigation into all of Defendant's conduct, in particular the pills that formed the basis for defendant's arrest, his state court case, and this federal case.

An additional fact brought out at the instant evidentiary hearing was that ATFE Special Agent Beardsley, the co-interviewer at the jail questioning and the case agent in this federal case, had worked with lead interviewer Sgt. Schuette on a state-federal task force for four years, 2004-2008. This further evidences that the tandem interviews were designed to cover the pills as well. This is strongly evidenced in the February 15th interview, where Beardsley is questioning Defendant about pills and drugstores in Detroit – which bears no relationship to the Jackson firebombing investigation, but instead bears a direct relationship to the instant charges.

Further evidence of the intent of Sgt. Schuette was his testimony regarding the February 15th interview, acknowledging that he talked with Defendant King about the firebombing and how that related to the pills. TR. P.51.

The bottom line is that the evidence produced at the instant hearing establishes that the initial state pill prosecution, and the present federal pill case are identical and intertwined through a tandem of state and federal agents, the exact same physical evidence, and the joint investigation/interviews that produced the Defendant's statements sought to be suppressed.

To summarize, Detective Schuette went to the jail fully aware that the identical pills at issue in the state case and the instant federal case, and the firebombing were interrelated. To no one's surprise, Defendant King's responses in the jailhouse interviews discussed the pills, time and again.

To the extent that the government argues that the agents' intent was not to talk about the pills, but it just came out – the Court rejects that as inherently incredible. To the extent that the government says that it was not intending the interviews to be about pills, as it says it promised to Defendant King's court-appointed lawyer, that promise was not kept.

The Court will protect Defendant's personal Sixth Amendment right to assistance of counsel, and his right to knowingly waive that assistance, and further, will enforce the government's promise to not talk to Defendant about pills, by suppressing Defendant's statements about pills on February 7th and 15th, 2012. These statements were not spontaneous utterances – they were directly related to the discussions about the intertwined pill/firebombing matters.

Finally, having this case's lead federal agent Beardsley present at both interviews, further establishes that the federal government is complicit in the state conduct of violating Defendant's Sixth Amendment rights.

Accordingly, this Court will grant Defendant King's Motion to Suppress Defendant's statements made at the interviews/interrogations on February 7th and 15th, 2012.

SO ORDERED.

DATED: August 8, 2012

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

12